United States Court of Appeals,

Fifth Circuit.

No. 92-4235.

FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,

v.

Charles C. BARHAM, et al., Defendants,

C.A. REED, Jr., Defendant-Appellant,

Charles C. BARHAM, et al., Defendants & Third Party Plaintiffs-Appellants-Cross-Appellees,

v.

FEDERAL INSURANCE COMPANY, Defendant & Third Party Defendant-Appellee-Cross-Appellant.

July 15, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before REAVLEY, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The Federal Deposit Insurance Corporation ("FDIC") brought suit against certain former directors and officers of First National Bank of Ruston ("FNBR"), alleging that the directors had breached their fiduciary duty by authorizing imprudent loans. The directors subsequently filed suit against their insurer, Federal Insurance Company ("Federal"), claiming that Federal had to pay any losses resulting from the FDIC's claims. The district court granted summary judgment for Federal on the issue of insurance coverage, 794 F.Supp. 187. Finding no error, we affirm.

I

In April 1986, the Office of the Comptroller of the Currency ("OCC") closed FNBR and appointed the FDIC as the bank's receiver. In 1989, the FDIC brought suit against certain former directors and officers of FNBR, accusing the directors of breaches of fiduciary duty and breaches of contract resulting from improper management and lending practices. The directors thereafter filed a third-party claim against their insurer, Federal, alleging that Federal's Director and Officers Liability Policy ("D & O policy"), in effect from September 1981 through September 1984, should cover any

losses sustained as a result of the FDIC's claims.

The D & O policy between the directors and Federal is a claims-made policy, in the sense that it covers only losses arising from actual or potential claims for specific wrongful acts reported to Federal during the policy period or extended reporting period.[1] The D & O policy contains the following relevant provisions:

EXECUTIVE LIABILITY COVERAGE—INSURING CLAUSE 1

**1.1** The Company shall pay on behalf of each of the **Insured Persons** all **Loss,** for which such **Insured Person** is not indemnified by the **Insured Organization,** and which such **Insured Person** becomes legally obligated to pay on account of any claims(s) made against him, individually or otherwise, during or after the Policy Period for a **Wrongful Act:**

> (A) committed, attempted or allegedly committed or attempted by such **Insured Person(s)** before or during the **Policy Period** and
>
> (B) reported to the Company, in accordance with Section 4, during the **Policy Period** or, if exercised, the Extended Reporting Period.

....

REPORTING AND NOTICE

**4.1** A specific **Wrongful Act** shall be considered to have been first reported to the Company:

> (A) at the time that any **Insured** first gives written notice to the Company that a claim has been made against any **Insured Person(s)** for such **Wrongful Act;** or
>
> (B) at the time that any **Insured** first gives written notice to the Company (1) of the material facts or circumstances relating to such **Wrongful Act** as facts or circumstances having the potential of giving rise to a claim being made against any **Insured Person(s)** or (2) of the receipt of written or oral notice from any party that it is the intention of such party to hold any **Insured Person(s)** responsible for such **Wrongful Act;**

whichever occurs first.

**4.2** The **Insureds** shall, as a condition precedent to their rights under this policy, give to the Company written notice as soon as practicable of any claim made against any of them for a **Wrongful Act** and shall give the Company such information and cooperation as it may reasonably require.

**4.3** Notice hereunder shall be given to the Company at 51 John F. Kennedy Parkway, Short Hills, New Jersey 07078.

---

[1] The declarations page of the D & O policy states: **"THIS IS A CLAIMS MADE POLICY. Except as otherwise provided herein, this policy covers only Wrongful Acts reported to the Company during the Policy Period. Please read carefully."** *See* Record Excerpts for Directors tab. 9, at 1 (emphasis in original).

....

DEFINITIONS

**9.1** When used in this policy:

> ....
>
> **Insured(s)** means the **Insured Organization** and/or any **Insured Person.**
>
> ....
>
> **Insured Organization** means, collectively, those organizations designated in Item 6 of the Declarations.[2]
>
> **Insured Person(s)** means any of those persons designated by Item 7 of the Declarations.[3]
>
> **Loss** means the total amount which any **Insured Person(s)** become legally obligated to pay on account of all claims made against them for **Wrongful Acts** with respect to which coverage hereunder applies....
>
> ....
>
> **Wrongful Act** means any error, misstatement or misleading statement, act or omission, or neglect or breach of duty committed, attempted or allegedly committed or attempted by an **Insured Person,** individually or otherwise, in the discharge of his duties to the **Insured Organization** in his **Insured Capacity,** or any matter claimed against him solely by reason of his serving in such **Insured Capacity.**

Record Excerpts for Directors tab. 9, at 2-4, 7 (emphasis in original).

Both the directors and Federal filed motions for summary judgment on the issue of insurance coverage. Finding no ambiguity in the terms of the D & O policy and no dispute as to the underlying facts, the court concluded that the directors had failed to comply with the reporting requirements of subsection 4.1 and 4.2 of the policy—i.e., that the directors had failed to give Federal written notice during the policy period of a specific wrongful act giving rise to an actual or potential claim, and that the directors had failed to provide written notice of a claim "as soon as practicable." The court

---

[2]The named insured organization on the declarations page is FNBR. *See* Record Excerpts for Directors tab. 9, at 1.

[3]The named insured persons on the declarations page are the directors and officers of FNBR. *See id.*

therefore granted summary judgment for Federal.  The directors filed a timely notice of appeal.[4]

## II

We review the district court's grant of a summary judgment motion de novo.  *Davis v. Illinois Central R.R.,* 921 F.2d 616, 617-18 (5th Cir.1991).  Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The underlying facts of this action are not disputed.  Therefore, we are left with determining whether the district court erred, as a matter of law, in interpreting the terms of the D & O policy to deny the directors coverage.  *See Guaranty Nat. Ins. Co. v. North River Ins. Co.,* 909 F.2d 133, 135 (5th Cir.1990) (holding that the "[i]nterpretation of an insurance policy is a question of law").

The directors contend that the district court erred in concluding that they failed to meet the reporting requirements of the policy.  *See* Brief for Directors at 20-40.  Applying Louisiana rules of construction,[5] we are mindful that "[a]n insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties."  *Pareti v. Sentry Indem. Co.,* 536 So.2d 417, 420 (La.1988).  "If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written."  *Id.*  We further note that although we must construe any ambiguity in contractual terms against the insurer, we "have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language."  *Id.;  see also Gulf Island, IV v. Blue Streak Marine, Inc.,* 940 F.2d 948, 952 (5th Cir.1991) (citing *Pareti* ).

We read the D & O policy to be unambiguous in its terms.  The policy states that the directors must comply with the reporting provisions of section 4 to be covered under the policy, including, but

---

[4]The directors appealing summary judgment are:  Charles C. Barham, Roland W. Dobson, John J. McHale, Jr., J. Samuel O'Donnell, III, C.A. Reed, Jr., the estate of Robert W. Sharp, M.D., and Joe D. Waggonner.  Reed filed a separate appellate brief, raising the same arguments on appeal as the other directors.

[5]We apply Louisiana laws of construction to this diversity suit since Louisiana is the forum state.  *See Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.,* 783 F.2d 1234, 1238 (5th Cir.1986) (applying substantive law of forum state to diversity suit);  *see also* Record Excerpts for Directors tab. 8, at 2 (stating that FNBR's principal place of business was Louisiana).

not limited to, subsection 4.1.[6]  *See* Record Excerpts for Directors tab. 9, at 2-4.  Pursuant to subsection 4.1, a specific wrongful act is considered to have been reported to Federal if:  (1) the directors gave written notice to Federal that an actual claim had been made against them;[7]  (2) the directors gave written notice to Federal of the material facts and circumstances relating to a specific wrongful act as facts and circumstances having the potential to giving rise to a claim;  or (3) the directors gave written notice to Federal of another party's intent to hold the directors responsible for a specific wrongful act.  *See id.* at 3-4.

Regarding the first reporting method, the directors allege that Federal's agent, Vic Stewman, discovered a 1982 Letter of Agreement ("1982 letter") between FNBR and the OCC,[8] in which FNBR agreed to "adopt and implement policies and procedures to prevent future violations of law and regulation."  Directors' Mem.Supp.Summ.J.Ex. 2, at 2.  The directors argue that the 1982 letter constituted a "claim," which Federal received notice of during the policy period.  *See* Brief for Directors at 22-29.

Even assuming *arguendo* that constructive notice could satisfy the reporting requirements of section 4 of the policy,[9] we disagree that the 1982 letter constituted notice of a claim, as that term

[6]Because we conclude that the directors failed to comply with subsection 4.1 of the policy, a prerequisite to coverage under the policy, we need not address whether the directors also failed to comply with subsection 4.2, which requires that the directors give Federal written notice of any claim "as soon as practicable."

[7]In addition, written notice had to be sent to Federal's New Jersey address.  *See* Record Excerpts for Directors tab. 9, at 4 (subsection 4.3 of policy).

[8]Stewman discovered the 1982 letter while conducting an insurance risk survey of FNBR.  *See* Directors' Mem.Supp.Summ.J.Ex. 8.

[9]As far as we can tell, Louisiana courts have not yet determined whether constructive notice may satisfy the reporting requirements of a claims-made policy.  We nevertheless point out that according to Louisiana law, "[a]bsent conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit liability and impose such reasonable conditions as they wish upon the obligations they assume by contract.  In these circumstances, unambiguous provisions limiting liability must be given effect." *Breaux v. St. Paul Fire & Marine Ins. Co.,* 326 So.2d 891, 892-93 (La.App. 3 Cir.1976).  The policy unambiguously limits Federal's liability to losses for wrongful acts reported to Federal *in accordance with section 4.  See* Record Excerpts for Directors tab. 9, at 2.  Specifically, the directors themselves had to provide written notice of any wrongful acts giving rise to an actual or potential claim, and such notice had to be mailed to Federal's New Jersey office. *See id.* at 3-4.  We do not find, and the directors do not argue, that these provisions violate public policy.  Thus, allowing constructive notice to satisfy the

is used in the policy. According to Louisiana law, words used in an insurance policy "are to be understood in the[ir] common and usual significa[nce]," *Harmon v. Lumbermens Mut. Casualty Co.,* 247 La. 263, 277, 170 So.2d 646, 651 (1965), when read in the context of the policy itself.[10] *See Jensen v. Snellings,* 841 F.2d 600, 616 (5th Cir.1988) (applying Louisiana law) (reading undefined term in the context of the policy itself, to define "claim" to mean "an actual demand for something on the ground of a right"). When read in the context of the D & O policy, the term "claim" unambiguously refers to a demand which necessarily results in a loss—i.e., a legal obligation to pay—on behalf of the directors. *See* Record Excerpts for Directors tab. 9, at 2 (subsection 1.1) ("The Company shall pay on behalf of each of the **Insured Persons** all **Loss,** ... which such **Insured Person** becomes legally obligated to pay on account of any claim(s) made against him...."). We think it clear that a demand for regulatory compliance does not rise to the level of a claim, as that term is used in the policy. *See California Union Ins. v. American Diversified Sav.,* 914 F.2d 1271, 1274-1277 (9th Cir.1990) (construing similar policy language to hold that "[t]he term claim should not be interpreted so broadly as to include a regulatory agency's request of the insured to comply with regulations where, as here, the agency did not directly threaten [the insured] with liability"), *cert. denied,* 498 U.S. 1088, 111 S.Ct. 966, 112 L.Ed.2d 1052 (1991); *MGIC Indem. Corp. v. Home State Sav. Ass'n,* 797 F.2d 285, 286-88 (6th Cir.1986) (construing similar policy language to hold that "the only kind

reporting requirements of section 4 would effectively "read-out" these unambiguous provisions.

The directors' reliance upon *Reagan v. Mid-Continent Underwriters, Inc.,* 150 So.2d 75 (La.App. 4 Cir.1963), is misplaced, as that case stands for the proposition that constructive notice may satisfy an insurance policy's notice requirements, where the policy is an "occurrence" policy. Here, the D & O policy is a "claims-made" policy. Because notice of a claim or potential claim defines coverage under a claims-made policy, we think that the notice provisions of such a policy should be strictly construed. *See Driskill v. El Jamie Marine, Inc.,* 1988 WL 93606 (E.D.La. Sept. 7, 1988) ("In occurrence policies, the notice requirement is merely to "aid the insurance carrier in investigating, setting, and defending claims,' but in claims-made policies, the notice requirement is as important as the requirement that the claim be asserted during the policy period. It is the transmittal of notice of the claim that invokes coverage."); *FDIC v. Continental Casualty Co.,* 796 F.Supp. 1344, 1351 (D.Or.1991) (stating that "[c]ourts typically enforce the notice requirements in claims-made policies strictly").

[10]The term "claim" is not explicitly defined in the policy. *See* Record Excerpts for Directors tab. 9.

of "claim or claims' that could trigger the insurer's obligation to pay would be a demand for payment of some amount of money").  Because the 1982 letter makes no reference to a loss which FNBR may sustain as a result of its failure to comply with certain banking regulations, we conclude that no claim was reported to Federal during the policy period.

We find equally unavailing the contention that the directors satisfied the second reporting method.  Pursuant to subsection 4.1(B)(1), the directors had to give Federal written notice "of the material facts and circumstances relating to such [w]rongful [a]ct[s] *as facts and circumstances having the potential to give rise to a claim.*"  Record Excerpts tab. 9, at 4 (emphasis added).  We interpret this language to mean that the directors had to give written notice of the specific acts they considered to have claim potential.  *Cf. California Union,* 914 F.2d at 1277-78 (construing policy language providing that "[i]f ... the insured[ ] shall become aware of any occurrence which may subsequently give rise to a claim being made," to mean that insured had to give notice of anything it considered to be a potential claim).  The directors concede that they did not give Federal written notice of any specific wrongful acts they believed to have claim potential, and therefore did not literally comply with subsection 4.1(B)(1).  *See* Brief for Directors at 29-41.  They instead argue that Federal received constructive notice of the facts and circumstances with claim potential, through Stewman's investigation, and that such notice, as a matter of law, should be held to satisfy subsection 4.1(B)(1)'s directives.  *See id.*

Even assuming arguendo that constructive notice could suffice,[11] we find that Federal's knowledge of general bad practices did not, in fact, satisfy subsection 4.1(B)(1)'s requirement that Federal receive notice of the "facts and circumstances [relating to specific wrongful acts] having the potential to give rise to a claim."  Federal, at most, possessed information that regulators had disapproved and criticized some of FNBR's banking relationships and loan transactions.  *See* Brief for Directors at 35-36.  This information did not identify which specific acts by FNBR had claim potential.  We therefore hold that the information Federal may have received through Stewman's insurance risk survey was not effective notice of a potential claim.  *See American Casualty Co. of*

---

[11]*See supra* note 9.

*Reading Pa. v. FDIC,* 944 F.2d 455, 460 (8th Cir.1991) (holding that general information of wrongdoing will not satisfy requirement in claims-made policy that notice of potential claims be specific); *see also California Union,* 914 F.2d at 1277-78.

Concerning the final reporting method, there is nothing in the 1982 letter or insurance risk survey suggesting that Federal received notice of another party's intention to hold the directors responsible for a specific wrongful act. *See* Record Excerpts for Directors tab. 9, at 4 (subsection 4.1(B)(2)). The directors therefore did not satisfy the reporting requirements of subsection 4.1 of the claims-made D & O policy. Because coverage under the D & O policy was dependent upon the directors satisfying these requirements, we find no error in the district court's entry of summary judgment for Federal on the issue of insurance coverage.

III

For the foregoing reasons, we AFFIRM.