# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 28, 2013

No. 12-30336

Lyle W. Cayce
Clerk

FIRST AMERICAN TITLE INSURANCE COMPANY,

Plaintiff - Appellant

v.

CONTINENTAL CASUALTY COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana

Before HIGGINBOTHAM, CLEMENT, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

First American Title Insurance Company ("First American") appeals the district court's grant of Continental Casualty Company's ("CNA") motion for summary judgment. First American challenges the district court's conclusion that a claims-made-and-reported policy's requirement that conditioned coverage on CNA's receiving of a written report of a claim within the policy's effective period is enforceable in a Direct Action case under LA. REV. STAT. ANN. § 22:1269(B)(1). We AFFIRM.

No. 12-30336

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The uncontested facts establish that the policy at issue, a Lawyers Professional Liability Policy ("the Policy"), is a claims-made-and-reported policy that covered Titan Title, LLC ("Titan") for claims first made and reported between August 16, 2008, and August 16, 2009. The Policy provides, in relevant part, that CNA

> agrees to pay on behalf of [Titan] all sums in excess of the deductible that [Titan] shall become legally obligated to pay as damages and claim expenses because of *a claim that is both first made against [Titan] and reported in writing to [CNA] during the policy period* by reason of an act or omission in the performance of legal services by [Titan] or by any person for whom [Titan] is legally liable . . . .

(emphasis added). The Policy also obligates Titan to "immediately give written notice to [CNA] during the policy period . . . of any claim made against [Titan]."

The underlying liability case alleged that Titan issued title insurance policies on behalf of First American as its authorized agent and that Titan and its sole member, Don Stelly ("Stelly"), negligently performed this duty. The lawsuit was filed on July 24, 2009, a date within the policy's coverage period. However, no one reported the claim to CNA until January 8, 2010, after First American discovered that Titan and Stelly were potentially covered under CNA's policy and joined CNA in the liability lawsuit via the Direct Action Statute.

CNA does not dispute that Titan is an insured under the policy and that the "claim" was "made" within the policy period. Instead, it argues that it was not "made *and reported*" within the policy period as required. First American counters that the Direct Action Statute vested First American with a cause of action against CNA as an injured third party despite the undisputed fact that CNA first received a report of First American's claim after the Policy expired.

The district court ruled in CNA's favor relying primarily on Louisiana Supreme Court cases, including *Hood v. Cotter*, 5 So. 3d 819 (La. 2008), which

No. 12-30336

hold that an injured third party cannot sue under the Direct Action Statute based on a claims-made-and-reported policy when the claim was not first made during the policy's effective period.  The district court explained that denying enforcement of the "made and reported" provision would "'effectively convert a claims-made policy into an occurrence policy and change the bargained-for exchange between the insurer and the insured.'" (quoting *Hood*, 5 So. 3d at 830). Accordingly, the district court granted CNA's motion for summary judgment and entered final judgment in favor of CNA.  First American timely appealed.

## II.  STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same standard as the district court.  *Gen. Universal Sys. Inc. v. HAL Inc.*, 500 F.3d 444, 448 (5th Cir. 2007).  Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The evidence must be viewed in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros.,* 453 F.3d 283, 285 (5th Cir. 2006).  We have no disputed facts in this case – the only question presented is one of law.

## III.  DISCUSSION

Because the Louisiana Supreme Court "has not spoken on [the] particular issue [presented by this appeal], we must make an '*Erie* guess'[1] and determine as best we can what the highest court of the state would be most likely to decide."  *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 317 (5th Cir. 2002) (citation omitted).  We conclude that the district court correctly determined that First American's action could not proceed under

---

[1]  We requested supplemental briefing from the parties on the issue of whether this question should be certified to the Louisiana Supreme Court for decision pursuant to Rule XII of the Louisiana Rules of Court.  *See* SUP. CT. OF LA. R. XII.  Both sides argued against certification.

the Direct Action Statute because the claim was not reported to CNA within the Policy's effective period.

## A.  Background Law

"The purpose of the Direct Action Statute is to provide liability coverage for the benefit of injured parties where there exists a contract of liability coverage between an insured and an insurance company." *Descant v. Adm'rs of Tulane Educ. Fund*, 639 So. 2d 246, 252 (La. 1994) (citation omitted).  To that end, the Direct Action Statute provides that an "injured person . . . shall have a right of direct action against the insurer [of any person liable for the injury at issue] *within the terms and limits*" of an insurance policy.  *See* LA. REV. STAT. ANN. § 22:1269(B)(1)(emphasis added); *see also* LA. REV. STAT. ANN. § 22:1269(D) ("It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons . . . .").  Importantly, the Direct Action Statute does not alter the scope of the claims covered by insurance policies.  *See Anderson v. Ichinose*, 760 So. 2d 302, 307 (La. 1999) ("[T]he Direct Action Statute does not extend any greater right to third-party tort victims who were damaged by the insured."); *Robicheaux v. Adly*, 779 So. 2d 1048, 1054 (La. Ct. App. 3d Cir. 2001) ("The Louisiana Supreme Court has clearly stated that the direct action statute does not extend the protection of the liability policy to risks that were not covered by the policy or were excluded thereby." (citation omitted)).  Instead, the statute provides a cause of action to injured third parties for claims that fall "within the terms and limits" of an insurance policy.  *See* LA. REV. STAT. ANN. § 22:1269(B)(1).

When applying this statute under "Louisiana rules of construction, we are mindful that '[a]n insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties.'" *Resolution Trust Corp. v. Ayo*, 31 F.3d 285, 289 (5th Cir. 1994) (alteration in original) (quoting *FDIC v. Barham*, 995 F.2d 600, 603 (5th Cir. 1993)).  Consequently, because the Direct Action

4

Statute affects the contract between the insurer and the insured, it must be strictly construed. *See State ex rel. Div. of Admin. v. McInnis Bros. Const.*, 701 So. 2d 937, 944 n.5 (La. 1997) (citation omitted) ("[A] statute which limits or restrains freedom of contract must be strictly construed.").

## B. First American's Claim

With this in mind, we consider whether First American's claim can proceed despite the fact that no claim was reported to CNA during the policy period. The Louisiana Supreme Court recognizes that "[w]here a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible." *See Livingston Parish Sch. Bd. v. Fireman's Fund Am. Ins.*, 282 So. 2d 478, 481 (La. 1973) (citation omitted); *see also Anderson*, 760 So. 2d at 305 (recognizing that *Livingston* "rejected a public policy attack on a claims-made policy"). Applying this principle in *Ayo*, we enforced a provision similar to the one at issue in this appeal against an injured third party bringing a claim under the Direct Action Statute. 31 F.3d at 288-89, 293 ("The rights of the injured party under claims-made policies, unlike [in an] occurrence policy . . . , do not vest at the time of the injury, but at the time a claim is made."). We distinguished claim-triggering reporting, which is central to claims-made-and-reported policies, from prejudice-preventing notice, which does not define the scope of coverage, but rather allows an insurance company "to timely intercede and protect its own interest." *Id.* at 292. While the absence of prejudice-preventing notice generally does not bar a third-party action under the Direct Action Statute, the absence of claim-triggering reporting can prevent such an action because relaxing this reporting requirement expands coverage, which "constitutes prejudice as a matter of law." *Id.*

No. 12-30336

Prejudice-preventing notice, commonly found in occurrence policies,[2] does not define the scope of coverage, but instead provides the insurer notice of claims to allow it adequate opportunity to respond. Such notice is an element of the policy-administration process, and the requirement is generally only triggered once a claim is made under the policy. In Louisiana, non-compliance with a notice requirement in an occurrence policy does not affect an injured third party's ability to bring a claim against an insurer under the Direct Action Statute because the right to bring suit under the statute based on an occurrence policy vests at the time of injury. *See West v. Monroe Bakery*, 46 So. 2d 122, 123, 130 (La. 1950); *see also Auster Oil & Gas v. Stream*, 891 F.2d 570, 578 (5th Cir. 1990) (explaining that the Direct Action Statute's limitation to claims made "within the terms and limits of the policy" only applies "to those terms and conditions with which the injured third party had the power to comply. It did not intend to include the notice requirements, which are outside of the injured third party's control." (citing *West*, 46 So. 2d at 126)).[3] The Direct Action

---

[2] Claims-made-and-reported policies differ from occurrence policies based on the type of risk each insures. *See Anderson*, 760 So. 2d at 305. Specifically, "'[i]n the 'occurrence' policy, the peril insured is the 'occurrence' itself. Once the 'occurrence' takes place, coverage attaches even though the claim may not be made for some time thereafter.'" *Id.* (quoting Sol Kroll, *The Professional Liability Policy "Claims Made,"* 13 FORUM 842, 843 (1978)). Conversely, "'in the 'claims made' policy, it is the making of the claim which is the event and peril being insured'" and coverage attaches to claims made in the policy period "'regardless of when the occurrence took place.'" *Id.* (quoting Kroll, *supra*, at 843). Also, unlike occurrence policies, claims-made-and-reported policies generally limit coverage to those claims "reported to the insurer within the policy period." *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 379 (Tex. 2009) (citation omitted). We have further distinguished claims-made-and-reported policies by noting that "[i]n such a policy, a provision will require not only that a claim be *made* but also that it be *reported* to the insurer within the specified time period. Both reports are considered essential to coverage . . . ." *E. Tex. Med. Ctr. Reg'l Healthcare Sys. v. Lexington Ins. Co.*, 575 F.3d 520, 528 (5th Cir. 2009) (applying Texas law) (internal citation and quotation marks omitted).

[3] First American relies on cases in the occurrence-policy context to urge that the reporting requirement in the Policy is unenforceable because of the difficulty it faces as an injured third party in complying with the requirement. The problem with this argument is that it ignores the fact that occurrence policies and claims-made-and-reported policies are

No. 12-30336

Statute's effect on notice provisions in occurrence policies does not answer the question before us, however, because the reporting provision at issue here serves a different purpose.[4]

Unlike occurrence policies, where a third party's claim vests at the time of the injury or occurrence, *see West*, 46 So. 2d at 123, a claims-made-and-reported policy establishes certain conditions precedent to coverage. *See Ayo*, 31 F.3d at 288 ("Under claims made policies, the mere fact that an 'act, error, or omission' occurs during the policy period is not sufficient to trigger insurance coverage."). Claim-triggering reporting is one of these conditions. By serving as a required element for establishing a claim under a claims-made-and-reported policy's insuring clause, claim-triggering reporting "allow[s] the insurer to 'close its books' on a policy at its expiration and therefore 'attain a level of predictability unattainable under standard occurrence policies.'" *Id*. at 289 (quoting *FDIC v. Mijalis*, 15 F.3d 1314, 1330 (5th Cir. 1994)). In exchange for the assurance that it will be liable for only those claims that are made and reported to it during the policy's effective term, an insurer may make certain concessions, such as accepting a lower policy premium. In light of the delicate balance in these policies, we strictly construe notice and reporting requirements in claims-made policies because of their important role in defining the scope of

different in scope of temporal coverage. First American's construction would expand coverage beyond the policy issued. The Direct Action Statute, by its own terms, does not operate to enlarge the risks insured.

[4] Although the concurring opinion suggests otherwise, the Policy's prejudice-preventing notice provision is not at issue here. Instead, CNA disclaims liability based on Titan's failure to provide the claim-triggering notice required by the Policy's insuring clause. It is undisputed that a claim was asserted against Titan within the effective period of this claims-made-*and-reported* policy but that CNA did not timely receive the claim-triggering "report" contemplated in the Policy's insuring clause. Accordingly, similar to the issue presented in *Ayo*, 31 F.3d at 292-93, we must consider whether under the Direct Action Statute a claim is properly made despite an insured's failure to provide timely claim-triggering reporting of the claim.

7

the bargained-for agreement and providing predictability to the insurer. *See* 31 F.3d at 289.

Louisiana Supreme Court precedent confirms the importance of enforcing the bargained-for scope of coverage reflected in claims-made-and-reported policies. For instance, in *Anderson* the court concluded that an injured third party could not bring a claim against an insurer under the Direct Action Statute because the claim was not made within the effective period of a claims-made-and-reported policy. *See* 760 So. 2d at 303, 306-07. Noting "the trend nationwide has been generally to uphold claims-made policies," the court explained that the Direct Action Statute does not confer on injured third parties any rights that were not otherwise provided to the insured under the policy. *Id.* at 306-07.

In *Hood*, the court again embraced the principle that the Direct Action Statute does not extend the scope of a policy to insure against risks that were not part of the bargained-for agreement between the insurer and the insured. *See* 5 So. 3d at 829-30 (noting that a requirement that claims be made and notice given during the effective period of a claims-made-and-reported policy "does not itself limit [a third-party] plaintiff's right of action," but instead "provides the scope of coverage bargained for by the [insurer]"). The court rejected an injured third party's argument that his claim vested under the Direct Action Statute when the injury occurred, thereby allowing him to file a claim outside the effective period of a claims-made-and-reported policy. *Id.* As the court explained, the Direct Action Statute does not prohibit a "claims-made policy provision that makes coverage dependant upon a claim being first made *and reported* during the policy period." *Id.* at 830 (emphasis added).

First American argues that these cases address the Direct Action Statute's effect only on the requirement that claims be *made* within a policy's effective term, arguing that it did "make" the claim within that period (albeit without

No. 12-30336

CNA's knowledge). *See Hood*, 5 So.3d at 825; *Anderson*, 760 So. 2d at 307 n.8. We conclude, however, that the underlying rationale of these cases establishes the importance of applying the Direct Action Statute in a manner that gives effect to the bargained-for claims reporting obligation in the Policy. Concluding "otherwise would effectively convert a claims-made policy into an occurrence policy and change the bargained-for exchange between the insurer and the insured." *Hood*, 5 So. 3d at 829-30.[5]

Therefore, we see no reason to give different analytical treatment to the reporting requirement in claims-made-and-reported policies when the claims-made requirement within the same insuring clause is enforceable against an injured third party bringing a claim under the Direct Action Statute. Both terms are unambiguous and serve the similar purpose of defining the boundaries of coverage rather than merely post-event claims handling. Invalidating either of these requirements would expand the scope of the bargained-for policy limits and effectively rewrite a claims-made-and-reported policy into an occurrence policy. Here, the Policy unambiguously makes reporting to CNA during the

---

[5] "In making an *Erie* guess, we defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland*, 524 F.3d 676, 678 (5th Cir. 2008) (citation and quotation marks omitted). The relevant decisions from intermediate state courts addressing the effect of the Direct Action Statue on reporting requirements in claims-made-and-reported policies offer divergent approaches. *Compare Murray v. City of Bunkie*, 686 So. 2d 45, 50 (La. Ct. App. 3d Cir. 1996) (holding that the Direct Action Statute vests an injured third party with the right to bring suit under a claims-made-and-reported policy at the time of injury regardless of whether the insurer receives timely notice), *and Williams v. Lemaire*, 655 So. 2d 765, 768-69 (La. Ct. App. 4th Cir. 1995) (same), *with Vitto v. Davis*, 23 So. 3d 1048, 1050-51, 1053 (La. Ct. App. 3d Cir. 2009) (holding that an injured third party could not bring a claim under the Direct Action Statute and noting that a "provision in [a claims-made-and-reported] policy limiting coverage to those claims that were both made and reported during the policy period does not serve to limit [the injured third party's] right to bring suit against [the insurer]. 'Rather it provides the scope of coverage bargained for by [the insurer].'" (quoting *Hood*, 5 So. 3d at 829)). The dissonance in these cases means that the intermediate state-court decisions do not significantly aid our *Erie* analysis.

No. 12-30336

policy term a prerequisite to coverage. Because it is undisputed that no one reported the claim to CNA within the requisite period, First American's claim under the Direct Action Statute does not lie.

## IV.  CONCLUSION

Guided by our precedent and the Louisiana Supreme Court's holdings in *Anderson* and *Hood*, we conclude the Direct Action Statute does not trump the reporting provision in CNA's claims-made-and-reported policy's insuring clause, which requires that a claim be reported to CNA within the Policy's effective period. We therefore AFFIRM the district court's summary judgment in CNA's favor.

No. 12-30336

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring in part and concurring in the judgment:

I concur on the ground that the Louisiana Supreme Court distinguishes between reporting covenants in "claims-made-and-reported" policies and notice conditions in "occurrence" policies, enforcing the former against Direct Action plaintiffs, but not the latter.[1] I see no need to defend this distinction to affirm, and do not join the majority's attempt to do so.[2]

---

[1] *Compare Hood v. Cotter*, 5 So. 3d 819, 830 (La. 2008) ("[W]e do not interpret [the Direct Action Statute] as prohibiting the claims-made policy provision that makes coverage dependent upon a claim being first made *and reported* during the policy period." (emphasis added)), *with West v. Monroe Bakery*, 46 So.2d 122, 126 (La. 1950) ("[T]he words 'terms and limits of the policy' [in the Direct Action Statute] were not intended to include the requirement of notice, but refer[] only to . . . those . . . conditions with which it was within the power of the plaintiff to comply."); *see also* 3-20 APPLEMAN ON INSURANCE LAW AND PRACTICE § 20.01[7] (Matthew Bender ed., 2012) ("A few jurisdictions distinguish between claims-made policies and a variant known as a 'claims-made-and-reported' policy. Under claims-made-and-reported policies, the insured's duty to provide notice is part of the insuring agreement; that is, providing notice to the insurer is a contractual covenant of the insured and not, as with occurrence-based or claims-made coverage, a mere condition to coverage. Thus, in claims-made-and-reported policies, coverage is triggered only where the third-party claim is asserted against the policyholder during the policy period and the policyholder notifies the carrier of the claim during the policy period.").

[2] The majority observes that notice requirements in claims-made-and-reported policies are phrased as "conditions precedent" to recovery, and that reading such conditions out of the contract would "expand the scope of the bargained-for policy limits." But the same is true for notice conditions in occurrence policies. For example, in *West*, the occurrence policy provided that "written notice shall be given by . . . the insured to the company . . . as soon as practicable" and that "no action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy." 46 So. 2d at 127. Nevertheless, the Louisiana Supreme Court held that the Direct Action Statute knocked the notice condition out of the contract, reasoning that "the injured party [rarely has] knowledge as to who may be the insurer of the party responsible for his injuries." *Id.* at 126. As several Louisiana appellate courts have recognized, this remedial logic applies with equal force to reporting requirements in claims-made-and-reported policies. *See Murray v. City of Bunkie*, 686 So. 2d 45, 47, 50 (La. App. 1996); *Williams v. Lemaire*, 655 So. 2d 765, 767–68 (La. App. 1995).

No. 12-30336

I pause only to note that the majority's reliance on our decision in *Resolution Trust Corp. v. Ayo*[3] is misplaced. In *Ayo*, we recognized that under Louisiana law, "[a]n insurer may not raise the nonprejudicial failure of its insured to give notice of accident *or suit* as a valid defense to claims of injured third parties," observing that "the policy terms do not control the scope and nature of the injured third party's rights."[4] However, we suggested that this principle applies only to "prejudice-preventing" notice clauses, which require the insured to timely notify the insurer of a claim asserted against the insured *within the policy period*.[5] We determined that the principle does not apply to "claim-triggering" notice clauses, which allow an insured to obtain coverage for a claim asserted *outside of the policy period* if the insured timely notifies the insurer of the "act, error or omission which . . . give[s] rise to [that] claim."[6] Because this latter type of notice clause is best viewed as going to the definition of what constitutes a timely "claim" within the meaning of the policy,[7] we reasoned that an insured's failure to provide the requisite notice barred recovery

---

[3] 31 F.3d 285 (5th Cir. 1994).

[4] *Id.* at 292 (emphasis added).

[5] *Id.* at 292–93.

[6] *Id.* at 292; *see also* 3-20 APPLEMAN ON INSURANCE LAW AND PRACTICE § 20.01[7][d] (Matthew Bender ed., 2012) ("Virtually all claims-made and claims-made-and-reported policies contain a mechanism known as the 'notice of circumstance' or 'notice of potential claim' provision. . . . If the circumstances prompting the notice of potential claim later give rise to an actual claim against the insured, it will be deemed to fall within the policy period in which the notice of potential claim was provided to the insurer.").

[7] *See Ayo*, 31 F.3d at 292 (observing that a claim-triggering notice clause has the effect of "turn[ing] potential future claims, which could be made outside the policy's coverage, into actual claims made during the policy's term.").

No. 12-30336

by a Direct Action plaintiff who asserted its claim *outside of the policy period*.[8]

Here, it is undisputed that First American asserted a claim against the insureds *within* the policy period,[9] and the only question is whether the insureds' failure to notify Continental of the timely claim bars First American from recovering in its Direct Action suit. The claim-triggering notice condition in the policy is thus simply not at issue,[10] and if anything, *Ayo* suggests that First American should succeed.[11] However, as *Ayo* predates applicable Louisiana Supreme Court precedent, it does not dissuade me from joining in the majority's judgment.

---

[8] *See id.* at 293 ("[T]he rights of the injured party under claims-made policies . . . do not vest at the time of the injury, but at the time a claim is made. 'Potential claims' are not covered by the . . . [claims-made policy] unless [the insurer] had in fact received objective notice of those potential claims [through the insured's compliance with the claim-triggering notice provision].").

[9] The policy defines the term "claim" without reference to whether the insurer receives notice, providing that a "claim" occurs when the insured receives "a demand . . . for money or services arising out of an act or omission, including personal injury, in the rendering or failure to render legal services."

[10] Like the claims-made policy in *Ayo*, the policy at issue here contains both a prejudice-preventing notice clause ("The Insured, as a condition precedent to the obligations of the Company under this Policy, shall immediately give written notice to the Company during the policy period of any claim made against the Insured") and a claim-triggering notice clause ("If during the policy period the Insured shall become aware of any act or omission that may reasonably be expected to be the basis of a claim against the Insured and gives written notice to the company . . . then any such claim that is subsequently made against the Insured . . . shall be deemed to have been made at the time such written notice was given to the Company"). *Cf. Ayo*, 31 F.3d at 292 ("This claim-triggering notice, i.e., the notice provision in 6(a), serves a very different function than the prejudice-preventing notice required under clause 6(b)."); *cf. also id.* at 288–89 (setting forth language of clauses 6(a) and 6(b)). But since it is undisputed that First American timely asserted its claim against the insureds, only the prejudice-preventing notice clause is possibly at issue.

[11] *See* 31 F.3d at 292–93; *see also Murray*, 686 So. 2d at 50 (refusing to enforce reporting requirement in claims-made-and-reported policy against a Direct Action plaintiff, noting that "we see no meaningful distinction between . . . failure to give notice under an occurrence policy and . . . failure to give notice under a 'claims made' policy."); *Williams*, 655 So. 2d at 768 (same).