Affirmed by unpublished opinion. Judge FLOYD wrote the majority opinion, in which Judge DUNCAN joined. Judge THACKER wrote a dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
FLOYD, Circuit Judge:
Appellants are Baylor & Jackson, PLLC, a law firm in Washington, D.C., and its two principals, Brynee Baylor and Dawn Jackson (collectively, Baylor & Jackson). In 2006, Baylor & Jackson filed a response to a motion on behalf of its clients, Henry Thomas (Thomas) and Richard Thomas (collectively, the Underlying Defendants), owners and operators of several companies, averring that their adversary, William Robbins, was not entitled to summary judgment in a certain Maryland state-court case. Baylor & Jackson failed to provide documentation, as required by state procedural rules, to support its assertion that genuine issues of material fact prevented judgment as a matter of law, and the trial court ultimately granted judgment to Robbins.
In 2009, the Maryland Court of Appeals affirmed the trial court’s grant of summary judgment, reiterating Baylor & Jackson’s failure to properly support the opposition to the motion. Afraid that the Underlying Defendants would sue for malpractice, Baylor & Jackson notified its legal malpractice insurer, Appellee Minnesota Lawyers Mutual Insurance Company (MLM) of the possibility of a claim. Shortly thereafter, the Underlying Defendants filed the malpractice suit that Baylor & Jackson had feared, and in turn, MLM provided coverage. Within a year, however, MLM communicated to Baylor & Jackson that it would no longer defend or indemnify it in the action because it allegedly had failed to provide timely notification of the possibility of a claim. Obvious *314 ly, Baylor & Jackson disagreed with MLM’s conclusion on this point, and the dispute we address here was born. Each party petitioned the district court for a declaratory judgment in its favor, and on cross-motions for summary judgment, the court ruled for MLM. For the reasons outlined below, we affirm.
I.
Four lawsuits are in play here: (1) the Underlying Defendants’ litigation with the federal government for breach of contract, (2) Robbins’s litigation with the Underlying Defendants also regarding, among other things, breach of contract, (3) the Underlying Defendants’ litigation with Baylor & Jackson for legal malpractice, and (4) Baylor & Jackson’s litigation with MLM for disclaiming coverage in the Underlying Defendants’ malpractice action. Below, we provide the relevant facts from each suit.
A.
In 1999, the Underlying Defendants sued the federal government for breach of contract, and although they ultimately prevailed, they did not do so without the financial assistance of Robbins, at that time a friend of Thomas.
Thomas and Robbins entered into several agreements related to the funding of the litigation: (1) On July 22, 1998, they agreed that Thomas would repay Robbins $75,000 for every $25,000 he supplied as personal expense money, provided the litigation was successful (3:1 Agreement); (2) on December 16, 1998, they agreed that Robbins would finance the cost of the litigation; (3) on November 11, 1999, they agreed that Robbins would pay the legal fees associated with litigating and/or settling the government claims and that, for doing so, he would receive one-sixth of the first $21 million obtained against the government (Cooperation Agreement); (4) on May 1, 2001, Robbins agreed that if Thomas provided an accounting that showed he had repaid all of the out-of-pocket expenses that Robbins had incurred, he would give Thomas a fifty-percent discount on Thomas’s repayment of the attorneys’ fees (Private Legal Side Agreement); and (5) on May 20, 2002, Thomas promised to pay Robbins a $600,000 consulting fee for his advice related to the litigation (May 2002 Contract).
Between December 16,1998, and February 20, 2004, the legal fees associated with the litigation totaled almost $1 million. In February 2004, Thomas’s accountant prepared a report showing the amount that Thomas owed Robbins. The report erroneously deducted nearly $200,000 and failed to include the $600,000 consulting fee. Robbins objected to the figures and immediately retained counsel.
B.
In 2005, Robbins sued the Underlying Defendants in Baltimore City Circuit Court, alleging breach of the Cooperation Agreement, entitlement to declaratory relief, breach of fiduciary duty, breach of the 3:1 Agreement, and breach of the May 2002 Contract. Baylor & Jackson entered the case in 2006. On July 27, 2006, Robbins moved for summary judgment on the following claims: (1) breach of the Cooperation Agreement, (2) breach of fiduciary duty, (3) breach of the 3:1 Agreement, and (4) breach of the May 2002 Contract. The Underlying Defendants filed their opposition to the motion, and Robbins replied. Following a motions hearing, on August 22, 2006, the Baltimore City Circuit Court granted summary judgment to Robbins. It awarded $1,844,913 for breach of the Cooperation Agreement, $199,995 for breach of the 3:1 Agreement, and $600,000 for breach of the May 2002 Contract. Re *315 garding the fiduciary duty breach, it granted judgment to Robbins but awarded only attorneys’ fees for his pursuit of the claim.
The import of Thomas’s litigation with Robbins lies in some of the reasons that the circuit court granted summary judgment. Obviously, the court concluded that no genuine issue of material fact precluded judgment as a matter of law. But it was able to arrive at that conclusion in part because Baylor & Jackson failed to adequately support the Underlying Defendants’ opposition to Robbins’s motion.
For example, attempting to demonstrate that an issue of material fact existed regarding the Cooperation Agreement, the Underlying Defendants claimed the Agreement was invalid because “it was not signed by the original designated Fund Manager.” Robbins v. Thomas, No. 24-C-05-006855, slip op. at 6, 2006 WL 4756605 (Balt. City Cir. Ct. Aug. 22, 2006). But the circuit court refused to credit this assertion, stating, “Since Thomas submitted neither an affidavit nor a sworn statement to support this contention, this Court finds no basis upon which to accept his argument.” Id. Correspondence that MLM submitted to the district court in the present action provides additional details regarding the state court’s response to Thomas’s unsubstantiated allegation:
Baylor & Jackson filed a timely opposition to the motion for summary judgment which argued, at least in part, that summary judgment could not be granted as a matter of law because genuine disputes of material fact existed. In an attempt to present those material facts to the court, Baylor & Jackson attached an affidavit from Mr. Thomas. However, the affidavit was unexecuted and had been attached in that form in error. At the hearing on August 17, 2006, the Honorable Joseph H.H. Kaplan refused to either allow Mr. Thomas to execute the affidavit or testify to the contents of the affidavit despite Mr. Thomas’[s] presence at the hearing.
Minn. Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC, 852 F.Supp.2d 647, 651 n. 2 (D.Md.2012) (quoting correspondence between counsel for MLM and Baylor & Jackson). And at the conclusion of its discussion of the Cooperation Agreement, the court again referred to the lack of support accompanying Thomas’s opposition: “Although Thomas disputes various items in his Response, this Court cannot accept them as facts. Documents, affidavits, and sworn testimony in the record contradict the assertions made in Thomas’s Response.” Robbins, No. 24-C-05-006855, slip op. at 8.
On appeal, the Court of Special Appeals of Maryland affirmed the circuit court’s grant of summary judgment in part and reversed and remanded in part. Thomas v. Robbins, No. 944, slip op. at 20-21 (Md. Ct.Spec.App. July 8, 2009) (unreported). Relevant here, the court observed that the Underlying Defendants’ opposition to summary judgment “was not supported by affidavits, deposition testimony, interrogatory answers, or any sworn evidence as required by Maryland Rule 2-501,” id. at 7, and that such failure “was a proper ground upon which the trial court could conclude that no dispute of material fact existed,” id. at 11. Specifically addressing the trial court’s grant of summary judgment as to Robbins’s claims for breach of fiduciary duty, breach of the 3:1 Agreement, and breach of the May 2002 Contract, the court stated:
In granting summary judgment on Counts III [breach of fiduciary duty] and IV [breach of 3:1 Agreement] and the Consolidated Count [breach of May 2002 Contract], the trial court did not expressly restate its determination that appellants had failed to place disputed *316 material facts before the court by way of sworn evidence. Normally, we “are confined to the basis relied upon by that court and may not otherwise explain its conclusion by introducing new legal theories.” It is evident, however, that appellants’ failure to comply with Maryland Rule 2-501 severely undermined them opposition to summary judgment on all the counts. Consequently, we shall conduct our analysis of whether appellee was entitled to judgment as a matter of law on the basis of the facts as alleged in appellee’s motion for summary judgment.
Id. at 11-12 (footnote omitted) (citation omitted).
Ultimately, the court affirmed the trial court’s judgment, with the exception of its award of attorneys’ fees on the breach of fiduciary duty claim. As to that matter, it reversed and remanded the case for recalculation of the judgment.
C.
The third suit involved a legal malpractice action that the Underlying Defendants instituted in 2009 against Baylor & Jackson for its failure to properly support the opposition to summary judgment in the Robbins action. As noted above, MLM initially covered Baylor & Jackson under the legal malpractice insurance policy that it had provided them, but later, it reversed course. It was then that the fourth suit, and the one we address here, commenced.
The legal malpractice policy that MLM provided to Baylor & Jackson promised the following:
WE will pay all sums up to the limit of OUR liability, which the INSURED may be legally obligated to pay as DAMAGES due to any CLAIM:
(1) arising out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and
(2) resulting from the rendering or failing to render PROFESSIONAL SERVICES while engaged in the private practice of law or from rendering or failing to render PROFESSIONAL SERVICES as a PART TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.
The policy also gave MLM “the exclusive right to investigate, negotiate and defend CLAIMS seeking DAMAGES against the INSURED.” MLM first contracted with Baylor & Jackson in 2003. The policy had a term of one year, and Baylor & Jackson renewed yearly until 2010.
As noted above, the issue in this case is whether Baylor & Jackson provided timely notification to MLM of the possibility of a malpractice claim. Baylor & Jackson first contacted MLM on July 9, 2009, when it received the Court of Special Appeals’ opinion. Thomas brought his malpractice claim on August 11, 2009. MLM contends that Baylor & Jackson should have contacted the insurance company in 2006, when the circuit court issued its opinion. It was then, MLM maintains, that Baylor & Jackson “first became aware of facts which could have reasonably supported the claim asserted against it by Mr. Thomas.”
Upon notifying Baylor & Jackson that MLM would not represent it, MLM filed an action in the United States District Court for the District of Maryland, seeking a declaratory judgment that it had “no contractual obligation, under its insurance policy, to defend and/or indemnify Baylor & Jackson, Baylor, and/or Jackson ... in the case of Thomas v. Baylor, Case No. 24-C-09-005000.” Baylor & Jackson counterclaimed, seeking a declaratory judgment that (1) “Baylor & Jackson pro *317 vided timely notice to MLM of the possibility of a claim against it,” (2) “MLM did not suffer any actual prejudice as a result of Baylor & Jackson’s alleged delay in providing notice,” (3) “MLM is estopped from denying coverage,” and (4) “MLM is obligated to cover Baylor & Jackson’s settlement with the Thomas Defendants in the amount of $850,000.” Both parties moved for summary judgment. Reasoning that Baylor & Jackson failed to provide timely notice to MLM of the possibility a claim and that MLM did not need to show actual prejudice, the district court granted MLM’s motion and denied Baylor & Jackson’s motion.
II.
“We review the grant of summary judgment de novo, asking whether, viewing the facts in the light most favorable to [Baylor & Jackson], there is no genuine dispute as to any material fact and [MLM] is entitled to judgment as a matter of law.” Lansdowne on the Potomac Homeowners Ass’n, Inc. v. OpenBand at Lansdowne, LLC., 713 F.3d 187, 195 (4th Cir.2013). Because we sit in diversity in this ease, we apply Maryland law. See 28 U.S.C. § 1652.
Baylor & Jackson assert that the district court erred in determining that MLM had no obligation to provide it coverage because (1) it timely reported the possibility of a claim to MLM and (2) even if it did not, MLM failed to show that it suffered actual prejudice as a result.
A.
The policy that MLM provided to Appellants includes the following stipulations regarding notice of claims:
A CLAIM is covered only if made during the POLICY PERIOD or extended reporting period and reported to US:
(1)during the POLICY PERIOD;
(2) within 60 days after the end of the POLICY PERIOD; or
(3) during the extended reporting period.
The act, error or omission giving rise to the CLAIM must have occurred:
(1) during the POLICY PERIOD; or
(2) prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE, if the INSURED had no knowledge of facts which could reasonably support a claim at the effective date of this policy.
A CLAIM is deemed made when:
(1) a demand is communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;
(2) a lawsuit is served upon the INSURED seeking DAMAGES; or
(3) an act, error or omission by any INSURED occurs which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.
We will not provide coverage for any CLAIM arising out of the same, related or continuing PROFESSIONAL SERVICES which resulted in a CLAIM pri- or to the first policy issued to the INSURED by US.
“CLAIM(S)” means:
(1) A demand communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;
(2) A lawsuit served upon the INSURED seeking DAMAGES; or
(3) An act, error or omission by any INSURED which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably *318 should know, would support such a demand.
“POLICY PERIOD” means the period from the effective date of this policy to the expiration date or earlier termination date of this policy. POLICY PERIOD does not include any extended reporting period.
B.
First, Baylor & Jackson avers that it timely reported the possibility of a claim to MLM. As noted above, per MLM’s policy, a claim is deemed made when at least one of three circumstances occurs:
(1) a demand is communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;
(2) a lawsuit is served upon the INSURED seeking DAMAGES; or
(3) an act, error or omission by any INSURED occurs which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.
And for a claim to qualify for coverage, it must have occurred during the policy period or within a certain time prior to the policy period, provided that the insured “had no knowledge of facts which could reasonably support a claim” at the time the policy took effect.
Because Baylor & Jackson first contracted with MLM for coverage in 2008 and then renewed its coverage each year until 2010, the operative question is whether via the Baltimore City Circuit Court’s 2006 opinion granting summary judgment to Robbins, Baylor & Jackson “kn[ew] or reasonably should [have] know[n]” that it had committed “an act, error or omission” that “would support ... a demand” for damages. If the opinion provided such notice, Baylor & Jackson was obligated to report the possibility of a claim to MLM in 2006. If not, and its first notice of a potential demand for damages came in 2009, when the Court of Special Appeals affirmed the circuit court, then the contact it made with MLM in 2009 was timely.
In Maryland, an insured’s obligation to notify his insurer of a potential claim “accrues when the [insured has knowledge of] circumstances ... [that] would ... suggest[ ] to a reasonable person the possibility of a claim.” Commercial Union Ins. Co. v. Porter Hayden Co., 116 Md.App. 605, 698 A.2d 1167, 1194 (1997). We believe that Baylor & Jackson had such knowledge when the circuit court issued its decision on August 22, 2006.
First, the specifics of opposing motions for summary judgment are outlined clearly in Maryland’s Rules. Rule 2-501 states,
A response to a written motion for summary judgment shall be in writing and shall (1) identify with particularity each material fact as to which it is contended that there is a genuine dispute and (2) as to each such fact, identify and attach the relevant portion of the specific document, discovery response, transcript of testimony (by page and line), or other statement under oath that demonstrates the dispute. A response asserting the existence of a material fact or controverting any fact contained in the record shall be supported by an affidavit or other written statement under oath.
Md. R. Ct. 2-501(b). Moreover, as to affidavits, the Rules provide that they “shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated.” Id. 2-501(c). We think it safe to assume that any reasonable lawyer practicing in Maryland has knowl *319 edge of these rules. In fact, we cannot countenance otherwise.
Assuming, then, that Baylor & Jackson was aware of these rules, we can accurately term its attempt to oppose Robbins’s motion with an unexecuted affidavit as rather lax. Indeed, it should have registered no surprise when, at the motions hearing, the circuit court refused to credit the affidavit, allow Baylor & Jackson to execute it on the spot, or hear live testimony from Thomas. Of course, the events at the hearing foreshadowed the court’s ultimate grant of summary judgment to Robbins, but they also highlight the role that Baylor & Jackson’s failure to adequately represent Thomas played in the court’s decision. If Baylor & Jackson left the hearing with any confusion as to whether its representation was acceptable, the circuit court’s opinion should have provided clarity. Indeed, we think that upon receipt of the opinion, “a reasonable [lawyer],” especially one who had been present at the summary judgment motion hearing, would have considered “the possibility of a [malpractice] claim.” Commercial Union Ins. Co., 698 A.2d at 1194. The 2009 opinion from the Maryland Court of Special Appeals may have further solidified this possibility, but it hardly provided the first inkling that Baylor & Jackson had committed an omission that would support a demand for damages. Thus, we conclude that the district court properly held that Baylor & Jackson failed to timely notify MLM of the possibility of a claim.
Baylor & Jackson makes much of the fact that the circuit court’s decision was based on “numerous alternative grounds,” while the Court of Special Appeals decision “rested squarely on the alleged lack of an affidavit.” It contends that “[b]ecause the Circuit Court made it clear that ... the Thomas Defendants would have lost the case irrespective of whether Baylor & Jackson submitted an affidavit, there was no reason for the firm to expect that its clients would bring an action for malpractice.” But as the district court aptly recognized, Baylor & Jackson has a misplaced focus. The issue is not whether its failure provided the only reason for the circuit court’s judgment, but rather whether it provided any reason for the judgment. Obviously, it did. And because it did, we believe that Baylor & Jackson had adequate notice of the possibility of a malpractice claim such that it should have contacted MLM.
C.
Next, Baylor & Jackson avers that even if its notice was untimely, MLM was still obligated to provide coverage because it did not suffer actual prejudice from the untimely notice. Baylor & Jackson correctly recognizes that Maryland law sometimes requires insurers to demonstrate actual prejudice:
An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.
Md.Code Ann., Ins. § 19-110. But as the district court recognized, the circumstances under which insurers are required to provide such demonstration depends on the language of the policy at issue. The district court concluded that section 19-110 is inapplicable to the policy MLM provided to Baylor & Jackson, but we decline to reach the issue. Instead, we confine our decision to a determination of whether MLM sufficiently demonstrated actual *320 prejudice. If it did, we may affirm the district court’s judgment on that basis, without determining the applicability of section 19-110 to MLM’s policy.
As noted above, section 19-110 requires that an insurer establish actual prejudice by a preponderance of the evidence. A preponderance of the evidence is “superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.” Black’s Law Dictionary 1301 (9th ed.2009). We think that MLM made such a showing.
We note first that MLM’s 2006 policy states, “WE have the exclusive right to investigate, negotiate and defend CLAIMS seeking DAMAGES against the INSURED for which the policy provides coverage.” Thus, MLM had not only agreed to “pay all sums up to the limit of [its] liability, which the INSURED may be legally obligated to pay,” it had also obligated itself to “investigate, negotiate and defend” such claims. Thus, when Baylor & Jackson failed, upon receiving the circuit court’s opinion, to notify MLM that a potential claim existed, such failure hindered MLM’s ability to fulfill its contractual duties. By the time Baylor & Jackson contacted MLM, Maryland’s Court of Special Appeals had already affirmed the circuit court’s grant of summary judgment. At that point, MLM had few options. In its brief, MLM maintains that Baylor & Jackson’s untimely notice was prejudicial because it “prevented [MLM] from advising Baylor & Jackson to file a motion for reconsideration, assisting Baylor & Jackson in crafting arguments for that motion, and/or assisting in the appeal.” We agree. See Prince George’s Cnty. v. Local Gov’t Ins. Trust, 388 Md. 162, 879 A.2d 81, 97 (2005) (“The case for finding prejudice as a matter of law is strongest for primary insurers who receive notice after a judgment because the late notice deprives the primary insurers of their right to control the investigation, defense, and settlement of claims.”). Contrary to the suggestion that MLM’s proffer of what it could have done is “speculative” and lacking in concreteness as to allegations of “actual harm,” post, at 327, we are unsure what additional proof of actual harm MLM could offer. By the time MLM received notice of a possible claim, the harm supporting the malpractice judgment was irreversible. Thus, in spite of the allegation that “MLM had the opportunity to mitigate the potential malpractice claim before it was even filed,” id., such an opportunity seems purely theoretical. MLM’s real mitigation opportunity came and went during the time that Baylor & Jackson knew about the possibility of a claim and remained silent. And because Baylor & Jackson remained silent, MLM can speak only to how it could have helped. That MLM was denied its true mitigation opportunity is proof enough of actual harm. We decline to levy a more stringent requirement under these facts. Accordingly, we affirm the district court’s grant of summary judgment to MLM.
III.
In sum, we affirm the district court’s grant of summary judgment to MLM, holding that (1) Baylor & Jackson failed to provide MLM with timely notice of a potential claim and (2) MLM demonstrated actual prejudice such that if section 19-110 applies, MLM’s disclaimer of coverage comported with Maryland law.

AFFIRMED.