# CIRCUIT COURT OF THE CITY OF NORFOLK

Kortney J. Jackson,
individually and by her mother,
guardian, and next friend,
Carolyn D. Jackson

v.

Antiniece D. Middleton,
Community Direct Services, Inc.,
and Houston Casualty Co.

June 1, 2015

Case No. CL14-104

BY JUDGE MARY JANE HALL

This matter comes before the Court on the Motion for Summary Judgment filed by the group of insurance companies referred to herein as Certain Underwriters at Lloyd's London ("Certain Underwriters"). Certain Underwriters seek a determination that the insurance policy issued to Defendant Community Direct Services, Inc. ("CDS") does not provide coverage for the claims of Plaintiffs Kortney and Carolyn Jackson at issue herein. Certain Underwriters advances a number of arguments in support of its Motion, and, with respect to all but one of those arguments, the Court determines that genuine issues of material fact preclude the entry of summary judgment. Because, however, there is no dispute about the factual basis establishing that Exclusion (1)(C) applies to exclude coverage for the Jacksons' claim against CDS, the Court grants summary judgment to Certain Underwriters.

*Background and Summary of Undisputed Facts*

This declaratory judgment action seeks to determine whether an insurance policy issued to the home health agency that was caring for Kortney Jackson provides coverage for her lawsuit. Jackson, a mentally disabled autistic adult, seeks damages from CDS for second degree burns

that she suffered on her legs and buttocks on November 26, 2011, while in the care of CDS employee/independent contractor, Antiniece Middleton.

CDS has admitted that it received a letter from Plaintiff's Counsel dated December 20, 2011. CDS Resp. to Req. for Admiss. 17 (filed as Ex. 9 to Certain Underwriters' Mot. for Summ. J.). Plaintiffs refer to this letter in paragraph 16 of their Amended Complaint: "Plaintiffs gave written notice of their claim for injuries to CDS on December 20, 2011." Certain Underwriters attached that letter to its Motion as Exhibit 4. CDS did not admit that it received the particular letter that Certain Underwriters appended as Exhibit 4 — only that it received a letter from Plaintiffs bearing the same date. No party has challenged, however, Certain Underwriters' representation that Ex. 4 is the same letter referred to in ¶ 16 of the Am. Compl. and in CDS' Resp. to Req. for Admiss. 17. Therefore, the Court accepts as an undisputed fact that CDS received this letter in December 2011. The subject line of the letter states: "Carolyn Jackson as mother, guardian, and next friend of Kortney Jackson v. Community Direct Services, Inc., & Antiniece Middleton. Date of Accident: 11/26/11." The letter advises, *inter alia*, that counsel has been retained in the referenced matter, that Kortney Jackson sustained severe and permanent injuries as the result of neglect by employee Antiniece Middleton, that the firm retains a lien for attorney's fees, and that the company should immediately provide a copy of the correspondence to its insurance carrier. The letter attached a signed authorization for release of confidential information to the law firm: "TO: Community Direct Services, Inc. I have requested and authorized Poole Mahoney, P.C... . as my attorneys to represent me in a personal injury matter."

Certain Underwriters issued a general and professional liability policy to CDS on February 23, 2012, that was retroactive to February 23, 2009. Pl. Am. Compl., Ex. 2 (Declarations Page). The policy contains exclusions including the following:

> This Policy does not apply to any Claim arising out of, based upon, relating to, or involving:
> 1. Any Professional Liability incident or General Liability incident or any act, error, omission, or circumstance which... .
> C. As of the inception of Underwriters' first Policy Period, had resulted in Bodily Injury ... Personal Injury ... of which an Insured was aware and could reasonably have foreseen might result in a claim.

On July 11, 2012, Plaintiffs filed their Complaint against CDS and Middleton for personal injuries relating to the November 2011 incident.

*Standard of Review*

"Summary judgment shall not be entered if any material fact is genuinely in dispute." Va. Sup. Ct. R. 3:20. "If it appears from the pleadings, the orders, if any … the admissions, if any, in the proceedings … that the moving party is entitled to judgment, the court shall enter judgment in that party's favor." Rule 3:20. Virginia law considers summary judgment to be a "drastic remedy," and courts are cautious to avoid having discovery "supplant the taking of evidence at trial." *Smith by Rosen v. Smith*, 254 Va. 99, 103-04 (1997) (*quoting Slone v. General Motors Corp.*, 249 Va. 520, 522 (1995); *Carson v. LeBlanc*, 245 Va. 135, 137 (1993)) (internal quotations omitted). In deciding a summary judgment motion, the Court also accepts as "true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Dudas v. Glenwood Golf Club*, 261 Va. 133, 136 (2001) (*quoting Dickerson v. Fatehi*, 253 Va. 324, 327 (1997)) (internal quotations omitted). "It is applicable only to these cases where no trial is necessary because no amount of evidence could affect the result." *General Accident Fire & Life Assurance Corp. v. Cohen*, 203 Va. 810, 814 (1962).

*Analysis*

A. *Exclusion (1)(C)*

Exclusion (1)(C) states with clarity that the Policy does not apply to any claim arising out of an incident that had resulted in personal injury as of the inception of the first policy period (here, February 23, 2012) of which CDS was aware and could reasonably have foreseen might result in a claim.

Plaintiffs argue that whether Exclusion (1)(C) applies depends on determining "what CDS knew and when." Plaintiffs assert that CDS' discovery responses establish that CDS did not interpret the demand letter from counsel as a "claim."

Whether CDS interpreted the demand letter as a "claim" need not be resolved for the purposes of this Motion. The Exclusion does not provide coverage for claims arising out of pre-Policy period "incidents" that had resulted in personal injury of which CDS was aware and "could reasonably have foreseen might result in a claim." Because CDS admitted that it received the demand letter from counsel naming CDS as a defendant in the subject line, that it was aware of the November 26, 2011, incident and Kortney Jackson's injuries, and that it had been advised of an attorney's lien and instructed to put their carrier on notice, Plaintiffs simply have nothing that they could prove to convince the finder of fact that any triable issue remains about whether CDS could have reasonably foreseen that a claim might be on the way.

Mindful of the disfavored status of summary judgment motions under Virginia law, the Court can nonetheless identify any fact that might be developed by which any party could prove that, despite its receipt of the demand letter, CDS could not reasonably have foreseen that Jackson's injuries would be the subject of a claim. The Court accepts as true, as it is required to do, "those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Dudas v. Glenwood Golf Club*, 261 Va. 133, 136 (2001). Any interpretation of the demand letter as something other than counsel's statement of intent to file a lawsuit against CDS would be "forced, strained, or contrary to reason."

In Virginia, contracts are "construed as written, without adding terms that were not included by the parties." *PMA Capital Ins. Co. v. US Airways, Inc.*, 271 Va. 352, 358 (2006) (*citing Wilson v. Holyfield*, 227 Va. 184, 187 (1984)). "When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *PMA Capital Ins. Co.*, 271 Va. at 358 (*citing Bridgestone/Firestone Inc. v. Prince William Square Assocs.*, 250 Va. 402, 407 (1995)). Virginia courts, furthermore:

> *interpret insurance policies, like other contracts*, in accordance with the intention of the parties gleaned from the words they have used in the document. Each phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein.

*Seal v. Erie Ins. Exch.*, 277 Va. 558, 562 (2009) (*citing Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 158 (1993) (emphasis added; citation omitted; internal quotations omitted)).

The Court rules that the plain language of Exclusion (1)(C) establishes that Certain Underwriters did not cover the Jacksons' claim against CDS.

B. *Waiver under Virginia Code § 38.2-2226*

Plaintiffs argue that Certain Underwriters' failure to timely send notice pursuant to Va. Code § 38.2-2226 bars them from relying on the Exclusion. This statute governs notice related to discovered breaches in insurance contracts:

> Whenever any insurer on a policy of liability insurance discovers a breach of the terms or conditions of the insurance contract by the insured, the insurer shall notify the claimant or the claimant's counsel of the breach. Notification shall be given within forty-five days after discovery by the insurer of the breach or of the claim, whichever is later. Whenever, on

account of such breach, a nonwaiver of rights agreement is executed by the insurer and the insured, or a reservation of rights letter is sent by the insurer to the insured, notice of such action shall be given to the claimant or the claimant's counsel within forty-five days after that agreement is executed or the letter is sent, or after notice of the claim is received, whichever is later. Failure to give the notice within forty-five days will result in a waiver of the defense based on such breach to the extent of the claim by operation of law.

This statute provides the consequence to an insurer that fails to give timely notice to a claimant of its insured's *breach*; it does not apply to the instant case. As the District Court held in *Cheatham v. NGM Ins. Co.*, 2013 U.S. Dist. lexis 18201 at *14-15 (E.D. Va. 2013) (applying Virginia law): "[t]his code section[, 38.2-2226,] has no application to this case. [Insurer] does not maintain that the insured … breached the terms or conditions of the policy. The pivotal issue is whether the language of the policy covers the claims." *See also The Continental Ins. Co. v. Matney*, 2004 U.S. Dist. lexis 6885 at *15-16 (W.D. Va. 2004) ("There is no precedent for the defendants' contention that section 38.2-2226 applies in a dispute where the plaintiff claims that the very terms and conditions of the policy should be of no legal effect from the very first moment when the policy was issued.").

Certain Underwriters does not assert the application of Exclusion (1) (C) to bar coverage of Plaintiffs' claim in response to any breach by CDS. The Exclusion establishes that Certain Underwriters does not cover this pre-policy claim. Accordingly, the Court finds that Va. Code § 38.2-2226 does not apply and Certain Underwriters has not waived its right to rely on the Exclusion. The Court need not and does not reach the disputed issues addressed by counsel of whether the insurance policy here was rescinded or canceled or whether Certain Underwriters should be estopped from making its rescission argument. Based on the language of the Exclusion, there was never any coverage for this claim which arose out of a pre-Policy incident of which CDS was aware and could reasonably have foreseen would result in a claim.

## Conclusion

For the foregoing reasons, Certain Underwriters at Lloyd's, London's Motion for Summary Judgment is granted.