**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1491

GATEWAY RESIDENCES AT EXCHANGE, LLC,

Plaintiff − Appellant,

v.

ILLINOIS UNION INSURANCE COMPANY, d/b/a ACE American Insurance
Company, d/b/a ACE Environmental, d/b/a Ace USA, d/b/a ACE USA Companies,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Liam O'Grady, District Judge.  (1:17-cv-00629-LO-JFA)

Argued:  December 12, 2018                    Decided:  February 28, 2019

Before AGEE, DIAZ, and HARRIS, Circuit Judges.

Affirmed by published opinion.  Judge Diaz wrote the opinion, in which Judge Agee and
Judge Harris joined.

**ARGUED:**  C. Thomas Brown, SILVER & BROWN, Fairfax, Virginia, for Appellant.
Douglas Aaron Winegardner, SANDS ANDERSON, PC, Richmond, Virginia, for
Appellee.  **ON BRIEF:**  Eric B. Lawson, SILVER & BROWN, Fairfax, Virginia, for
Appellant.

DIAZ, Circuit Judge:

Having been awarded more than $900,000 for a contractor's faulty workmanship, Gateway Residences at Exchange, LLC, sued to collect the judgment from the contractor's liability insurer, Illinois Union Insurance Company. The relevant policy, however, covered only claims reported to the insurer during the policy period, and that policy expired 19 months before Illinois Union learned about Gateway's claim.

That should end this case. But Gateway claims it may nonetheless recover on the policy because, by Virginia statute, Illinois Union waived certain defenses by failing to promptly inform Gateway of its coverage denial. *See* Va. Code Ann. § 38.2-2226. The district court was unpersuaded and, for reasons that follow, we affirm.

I.

A.

This insurance dispute started with two broken generators in an Alexandria, Virginia, apartment complex. Gateway, the building's owner, had hired a local contractor, Mechanical Design Group (MDG), to provide various engineering and design services. Among MDG's jobs was to install two "life and safety power generators" in the garage. J.A. 208. MDG apparently didn't install the generators very well, though, for when they started up in August 2014, they caught fire, wrecking the generators and delaying the 217-unit building's opening.

2

Blaming MDG for the damage, Gateway demanded that its contractor "cure the negligent design and installation" of the generators. J.A. 209. But it didn't sue MDG, at least initially. And in September 2014, MDG went out of business.

Before starting work on the Gateway project, MDG had bought liability insurance from Illinois Union. Under the policy, Illinois Union had agreed to indemnify MDG for legal claims that might arise from the Gateway job. The front page of the policy advised that it provided liability coverage "**ON A CLAIMS-MADE AND REPORTED BASIS**," meaning that it covered "**ONLY CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD**." J.A. 256 (typeface in original). To further stress the point, the policy made it a "condition precedent to coverage" that any claim be reported to the insurer during the policy period. J.A. 259. The policy period began on February 1, 2014, and ended one year later on February 1, 2015.[1]

MDG apparently never told Illinois Union about Gateway's potential claim before its insurance policy expired in 2015. Instead, Illinois Union first heard about the generator incident on September 6, 2016, after Gateway notified MDG's insurers that it intended to sue. Ten days later, Gateway sued MDG in Virginia state court alleging negligence and breach of contract.

---

[1] The policy also provided a 60-day "extended reporting period," subject to various conditions. J.A. 269. These provisions have no bearing on this appeal.

3

In early October 2016, MDG learned that Illinois Union had denied it coverage for Gateway's claim. The denial letter, sent by Chubb North American Claims "on behalf of" Illinois Union,[2] explained that because the claim was first reported in September 2016 there was "no coverage for this matter as no claims were made and reported during the policy period." J.A. 294, 296. A couple of weeks later, Gateway's counsel received a copy of Illinois Union's denial letter from MDG's insurance broker. Chubb, however, didn't contact Gateway directly about its coverage denial until January 23, 2017.

In the meantime, Gateway's lawsuit against MDG proceeded in state court. MDG never appeared, so the court entered a default judgment awarding Gateway $910,148 in damages and $22,580 in costs and attorneys' fees.

## B.

Having obtained this judgment, Gateway filed the present lawsuit seeking to collect from Illinois Union under MDG's liability policy. Gateway first sued in Virginia state court, but Illinois Union removed the case to the U.S. District Court for the Eastern District of Virginia, invoking that court's diversity jurisdiction. (Gateway is a citizen of Virginia and Maryland, whereas Illinois Union is a citizen of Pennsylvania and Illinois.) Gateway moved unsuccessfully to remand. *See Gateway Residences at Exch., LLC v. Ill. Union Ins. Co.*, No. 1:17-cv-629, 2017 WL 7805743, at *2 (E.D. Va. Sept. 11, 2017).

Following discovery, the district court granted summary judgment to Illinois Union because its policy didn't cover claims first reported after the policy period ended

---

[2] Illinois Union's parent company, ACE USA, merged with Chubb in 2016.

4

in February 2015.  The court also rejected Gateway's contention that Illinois Union had waived this noncoverage argument because it gave Gateway untimely notice of its denial. *Gateway Residences at Exch., LLC v. Ill. Union Ins. Co.*, No. 1:17-cv-629, 2018 WL 1629107, at *2–4 (E.D. Va. Apr. 3, 2018).  This appeal followed.

II.

Gateway challenges the district court's refusal to remand the case and its entry of judgment in Illinois Union's favor.  We have reviewed both issues de novo and find no error.

A.

Gateway first argues that the district court lacked subject matter jurisdiction and should have remanded this case to Virginia state court.  It contends that the present suit is a "direct action" against an insurer and that Illinois Union therefore assumes the citizenship of its insured under 28 U.S.C. § 1332(c)(1).  Were that true, the court would lack diversity jurisdiction because both Gateway and Illinois Union's insured, MDG, are citizens of Virginia.  We disagree, however, that Gateway's lawsuit is a "direct action."

Federal courts have original jurisdiction over suits for more than $75,000 between "citizens of different States."  28 U.S.C. § 1332(a)(1).  For diversity jurisdiction purposes, a corporation is a citizen of any state in which it is incorporated, plus the state or foreign country "where it has its principal place of business."  *Id.* § 1332(c)(1).  But § 1332(c) has an extra citizenship rule for insurance companies.  Namely:

> [I]n any direct action against the insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of . . . every State and foreign state of which the insured is a citizen.

*Id.* § 1332(c)(1)(A). In other words, if a plaintiff brings a "direct action" against a wrongdoer's liability insurer, the insurer assumes the citizenship of the insured. *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1299 (11th Cir. 2014).

On its face, this language sweeps broadly, potentially covering any lawsuit in which a third party sues a liability insurer over its insured's conduct. But the unanimous understanding of our sister circuits has been that "direct action" as used in § 1332(c) has a much narrower meaning. Specifically, it refers to a suit in which the plaintiff sues a wrongdoer's liability insurer without joining or first obtaining a judgment against the insured. *Kong*, 750 F.3d at 1300; *accord Hyland v. Liberty Mut. Fire Ins. Co.*, 885 F.3d 482, 484–85 (7th Cir. 2018); *Rosa v. Allstate Ins. Co.*, 981 F.2d 669, 675 (2d Cir. 1992); *Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 901–02 (9th Cir. 1982); *see Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 473 (1st Cir. 1979); *Henderson v. Selective Ins. Co.*, 369 F.2d 143, 149 (6th Cir. 1966); *see also* 7A Couch on Insurance § 107:4 (3d ed. updated 2018) (collecting additional cases).

Section 1332(c)'s legislative history strongly supports this reading. In 1964, Congress added language to the diversity jurisdiction statute to address "direct action" lawsuits allowed by the laws of Louisiana and Wisconsin. *See* S. Rep. No. 88-1308, at 1–2 (1964); *see also Velez*, 599 F.2d at 473. Under these laws, a plaintiff may sue a tortfeasor's liability insurer without joining the tortfeasor as a defendant and establish

6

both the insured's liability and the insurer's obligation in a single suit.  *See* La. Stat. Ann. § 22:1269(B); Wis. Stat. Ann. § 632.24.  Such statutes often created federal diversity jurisdiction when the insurer's citizenship was different from the plaintiff's.  And as a result, what were essentially tort disputes between local residents would end up in federal court.  *See* H.R. Rep. No. 88-1229, at 1–2 (1964); *cf. Lumbermen's Mut. Cas. Co. v. Elbert*, 348 U.S. 48, 56–57 (1954) (Frankfurter, J., concurring) (bemoaning "direct action" forum-shopping).  In response, Congress amended § 1332(c) to provide that the defendant insurer adopts the insured's citizenship in such cases, thereby destroying diversity and ensuring that the merits of the tort claim would be resolved in state court.

Given this provision's background, we agree with the Eleventh Circuit that the "key feature" of a direct action is "the plaintiff's ability to skip suing the [tortfeasor] and sue directly his insurance carrier."  *Kong*, 750 F.3d at 1300–01 (internal quotation marks omitted).  When a plaintiff must either join the local tortfeasor or first obtain a separate judgment against it, the lack of diverse citizenship forces the state tort claim into state court.  It's only when the plaintiff skips this step and sues the insurer directly that the concerns behind Congress's "direct action" amendments are implicated.  *See Kong*, 750 F.3d at 1300–01 (no direct action when plaintiff sued insurer after obtaining judgment from insured); *Hyland*, 885 F.3d at 485 (same).

Under this definition, Gateway's lawsuit is not a direct action.  Virginia doesn't have a direct action statute but instead requires a third-party claimant to first obtain a judgment against the insured.  The claimant may then sue the insurer on the policy to collect the judgment. Va. Code Ann. § 38.2-2200; *Richmond, Fredericksburg, &*

*Potomac R.R. Co. v. Hughes-Keegan, Inc.*, 152 S.E.2d 28, 33–34 (Va. 1967). And that is just what happened here. Gateway obtained a default judgment against MDG in state court then sued to collect that judgment under Illinois Union's liability policy. Gateway did not (and could not) skip the tortfeasor, the insured. Its present lawsuit is therefore not a direct action within the meaning of § 1332(c)(1).

Gateway's arguments do not persuade otherwise. First, it notes that we have previously used the words "direct action" to describe, under Virginia law, a lawsuit against an insurer to enforce a judgment against its insured. *See Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 221–22 (4th Cir. 1999). But in *Morrel*, we used "direct action" in the generic sense of a lawsuit filed against an insurer. We did not consider whether such a suit fits the technical meaning of § 1332(c). Second, Gateway points us to a sprinkling of district court cases holding that suits like this one are direct actions because they essentially do "in two steps" what Louisiana's and Wisconsin's statutes "did in one." *See, e.g.*, *Sherman v. Pa. Lumbermen's Mut. Ins. Co.*, 21 F. Supp. 2d 543, 544–45 (D. Md. 1998) (quoting *Prendergast v. All. Gen. Ins. Co.*, 921 F. Supp. 653, 655 (E.D. Mo. 1996)). But these cases, as the weight of contrary circuit precedent shows, are plainly wrong. It is precisely the first step of suing the insured tortfeasor (or, for that matter, the simultaneous step of joining it as a party) that funnels the tort suit into state court and thus eases Congress's jurisdictional and forum-shopping concerns.

This lawsuit, in sum, is not a direct action for purposes of § 1332(c)(1), and Illinois Union therefore does not adopt MDG's Virginia citizenship. Because this lawsuit

instead pits a Virginia plaintiff against an Illinois defendant, the district court had diversity jurisdiction and rightly refused to remand to state court.

B.

On the merits, the district court awarded summary judgment to Illinois Union because its policy covered only claims made and reported during the policy period and Gateway's claim wasn't reported until well after the policy had expired. Gateway's main contention on appeal is that, under a Virginia statute, Illinois Union waived that argument by failing to inform Gateway of its coverage denial within 45 days of receiving the claim. Illinois Union, in response, says the relevant statute doesn't apply in this case.

Gateway's waiver argument invokes Virginia Code Section 38.2-2226. Under this statute, an insurer that wants to defend against a third-party claimant based on its insured's breach of the underlying policy must notify the claimant of that intention. Specifically, it provides that:

> Whenever any insurer on a policy of liability insurance discovers a breach of the terms or conditions of the insurance contract by the insured, the insurer shall notify the claimant or the claimant's counsel of the breach. Notification shall be given within forty-five days after discovery by the insurer of the breach or of the claim, whichever is later.

Va. Code. Ann. § 38.2-2226. Failure to give the required 45 days' notice "will result in a waiver of the defense based on such breach to the extent of the claim by operation of law." *Id.*

The statute's text makes two things clear: it covers denials based on the insured's "*breach*" of the terms and conditions of the policy and applies to arguments properly characterized as waivable "*defenses*." Courts have therefore rightly held that that the

9

statue (or its precursor) doesn't apply when an insurer denies coverage because the claim falls outside the scope of policy coverage. *See Cheatham v. NGM Ins. Co.*, No. 3:12cv263-HEH, 2013 WL 509049, at *5 (E.D. Va. Feb. 11, 2013); *Berry v. State Farm Mut. Auto Ins. Co.*, 340 F. Supp. 228, 231 (E.D. Va. 1972); *Jackson v. Middleton*, 90 Va. Cir. 279, 2015 WL 10765161, at *3–4 (Va. Cir. Ct. 2015). The argument that a claim is outside the scope of coverage is not about an insured's "breach" of contract. A "breach" assumes a legal duty on the insured's part, but the insured obviously has no legal duty to incur covered claims. Likewise, a denial based on scope of coverage is not a "defense," as a "defense" presupposes the insurer's existing obligation to provide coverage.

With this understanding, we conclude that the statute doesn't apply in this case. Illinois Union hasn't denied coverage because of MDG's breach. Rather, it asserts—correctly—that the present claim is simply not covered by the policy.

As the policy's bold, all-caps preface makes clear, Illinois Union sold MDG a "claims-made-and-reported" policy. This is a type of "claims-made" policy, which differs from an ordinary "occurrence" policy in the type of risk it insures. An occurrence policy insures against a specific occurrence (say, a car accident or building fire), and usually doesn't depend on when the claim itself is filed. In contrast, under a claims-made policy, the making of the claim itself is the peril being insured. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1174 n.2 (5th Cir. 2013). Coverage usually attaches to a claim made during the policy period regardless of when the events underlying the claim took place. *Id. See generally 7* Couch, *supra*, § 102:22 (describing different liability policies).

10

Claims-made-and-reported policies, like the one Illinois Union sold MDG, are a distinct brand of claims-made policies. A claims-made-and-reported policy usually "requires the claim both be made against the insured and reported to the insurer during the policy period." *Sherwood Brands, Inc. v. Great Am. Ins. Co.*, 13 A.3d 1268, 1282 (Md. 2011). If no claim is reported, no coverage is triggered, even if the events underlying the claim took place during the policy period. And after the policy expires, "the insurer's potential liability ends." *T.H.E. Ins. Co. v. P.T.P. Inc.*, 628 A.2d 223, 227 (Md. 1993) (quoting *St. Paul Fire & Marine Ins. Co. v. House*, 554 A.2d 404, 418 (Md. 1989) (Murphy, C.J., dissenting)).

We do not think Virginia Code Section 38.2-2226 applies when, as here, an insurer denies coverage under a claims-made-and-reported policy because no claim was reported during the policy period. Illinois Union's potential liability under this policy ended when it expired in February 2015, so the policy simply can't cover a claim first reported to the insurer a full 19 months later in September 2016. Illinois Union is therefore not raising a "defense based on [an insured's] breach." Va. Code. Ann. § 38.2-2226. There was no "breach" because, after February 2015, there was no policy to be breached; there is no "defense" because, after February 2015, Illinois Union had no coverage obligation to defend against. *See T.H.E.*, 628 A.2d at 227, 230 (holding, under similar Maryland statute, that denial of claim made after expiry of claims-made-and-reported policy "resulted from the terms of coverage" and "is not attributed to a 'breach'" by the insured); *Minn. Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC*, 531 F. App'x 312, 325 (4th Cir. 2013) (Thacker, J., dissenting) ("If [the act triggering coverage]

11

occurred *after* the expiration of the liability policy . . . there is simply *no policy* which the insured can breach when it fails to notify the insurer of the claim."). Because Illinois Union's argument is based on noncoverage, and not on MDG's breach, Section 38.2-2226 does not apply.[3]

Besides being textually awkward, Gateway's reading of Section 38.2-2226 would have the policy embrace claims it was never intended to cover. In a claims-made-and-reported policy, the condition that claims be reported during the policy period is an essential part of the bargain between insurer and insured. *See Chas T. Main, Inc. v. Fireman's Fund Ins. Co.*, 551 N.E.2d 28, 29–30 (Mass. 1990). For the insurer, claim-triggering reporting allows it to "close its books on a policy at its expiration and therefore attain a level of predictability unattainable under standard occurrence policies." *First Am.*, 709 F.3d at 1175 (internal quotation marks omitted). In exchange, the insurer may accept a lower premium from the insured than it would for an occurrence policy with enduring liability. *Id.*; *Stine v. Cont'l Cas. Co.*, 349 N.W.2d 127, 131 (Mich. 1984).

---

[3] Gateway puts heavy stock in Section 38.2-2226's use of the phrase "terms *or conditions*" and language in Illinois Union's policy that makes reporting a claim during the policy period a "*condition precedent* to coverage." J.A. 259 (emphasis added). But Gateway's focus on this single word ignores the broader statutory language. The statute applies only to "conditions" that can plausibly be "breached," and where the breach of such conditions could rightly be understood as a "defense" to coverage. That is not true about the reporting condition in a claims-made-and-reported policy. *See Sherwood Brands*, 13 A.3d at 1288 (where notice of claim under claims-made policy occurs only after expiration, "this non-occurrence of the condition precedent to coverage is not a 'breach of the policy'").

Applying Section 38.2-2226 as Gateway urges, however, would expand the policy to confer benefits that MDG didn't pay for and that Illinois Union never agreed to provide. Though Virginia's legislature clearly designed Section 38.2-2226 to override certain defenses, we doubt it intended the statute to effectively rewrite basic coverage terms of insurance contracts. *Cf. Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1424–25 (9th Cir. 1993) (declining, for this reason, to apply a similar California rule to a claims-made policy); *Zuckerman v. Nat'l Union Fire Ins. Co.*, 495 A.2d 395, 405–06 (N.J. 1985) (same under New Jersey law).

Gateway's effort to shoehorn this dispute into Section 38.2-2226 misconstrues the insurance contract at issue. Gateway says its demand on MDG in August 2014 triggered coverage under the policy and obligated MDG to report that claim to its insurer. MDG's failure to make that report, Gateway says, was a "breach of the reporting condition." Appellant's Br. at 30. But under Illinois Union's claims-made-and-reported policy, the act triggering coverage was *not* Gateway's 2014 demand, as Gateway claims, but rather the communication of that claim to Illinois Union, which didn't happen until well after the policy expired.

This case might come out quite differently had MDG reported Gateway's demand in 2014, or had MDG instead bought an occurrence policy. In those scenarios, coverage under the policy would likely have been triggered, leaving Illinois Union to defend, perhaps, because MDG didn't give prompt enough notice or failed to fully cooperate with the insurer. In similar circumstances, courts have required notice under the statute at issue. *See Morrel*, 188 F.3d at 226–27 (insurer waived defense based on insured's failure

13

to assist); *Fed. Ins. Co. v. Nationwide Mut. Ins. Co.*, 448 F. Supp. 723, 725–26 (waived defense based on insured's failure to notify "as soon as practicable"). But those are not the facts of this case. Here, MDG bought a claims-made-and-reported policy and reported no claim to Illinois Union during the policy period. MDG did not "breach" the policy by not reporting Gateway's 2014 demand any more than one breaches a fire insurance policy by incurring damage from a flood.

Applying the text of the statute to the policy terms MDG and Illinois Union agreed to, we hold that Section 38.2-2226 does not apply to Illinois Union's denial of coverage. Illinois Union may therefore deny Gateway coverage despite allegedly failing to give notice. And since the policy by its clear terms does not cover Gateway's post-termination claim, summary judgment for Illinois Union was proper.[4]

## III.

We hold that the district court had subject matter jurisdiction and properly awarded summary judgment in Illinois Union's favor. The judgment of the district court is therefore

*AFFIRMED.*

---

[4] Given our holding, we do not decide whether Illinois Union complied with Virginia's notice statute because Gateway received actual (though indirect) notice of the denial less than 45 days after making its claim.